UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60742-CIV-ALTMAN

**OUT-GROW, LLC**,

    *Plaintiff*,

v.

**MIAMI MUSHROOM**, *et al.*,

    *Defendants.*

_____/

## ORDER ON FINAL DEFAULT

The Plaintiff has filed a Motion for Final Default Judgment (the "Motion") [ECF No. 18]. The Clerk entered a Default [ECF No. 15] against the Defendants because—despite having been served [ECF Nos. 7, 8]—the Defendants have failed to appear, answer, or otherwise respond to the Complaint. The Court has carefully considered the Motion, the record, and the applicable law. For the reasons set out below, the Motion is **GRANTED in part and DENIED in part**.

### THE FACTS

This case falls at the intersection of mushrooms and intellectual property. The Plaintiff, Out-Grow, LLC, sells supplies for growing and cultivating mushrooms. *See* Complaint [ECF No. 1] ¶ 8. Out-Grow has been in business since 2010. *Id.* ¶ 9. Out-Grow sells its products on its own websites, as well as on Amazon, Etsy, and eBay. *Id.* ¶ 10. The Defendants are Miami Mushroom, a competing business run as a sole proprietorship, and Ryan McCully, that business's sole owner. *Id.* ¶¶ 3–4. Miami Mushroom also sells supplies for mushroom cultivation and sells across its website, Amazon, Etsy, and eBay. *Id.* ¶¶ 12–13. Miami Mushroom sprouted into existence in 2020. *Id.* ¶ 11.

Out-Grow owns a trademark registration for the OUT-GROW mark. *Id.* ¶ 14. Out-Grow began using that trademark as early as 2011 and has continuously used the mark since that time. *Id.* ¶¶ 15, 17. Out-Grow registered its OUT-GROW mark with the U.S. Patent and Trademark Office in

December 2018. *Id.* ¶ 15. The trademark covers an array of goods and services related to mushrooms, including "dried edible mushrooms," "[f]resh mushrooms," and "[r]etail online ordering services featuring mushroom products." *See* Trademark Registration No. 5,636,623 [ECF No. 1-5].

In September 2020, Miami Mushroom, through McCully (its owner), wrote a letter to Out-Grow. *Id.* ¶ 20. The letter was addressed to "*Out Grow*™," indicating that McCully was fully aware of Out-Grow's trademark rights. *Id.* ¶ 21; *see also* Letter [ECF No. 1-6]. Seeking to cultivate a relationship, McCully said that he was "interested in doing business with your company" and asked if Out-Grow was "hiring or offering franchising opportunities." *Id.* He also "request[ed] permission for rights to use your brand for [his] products on Amazon." *Id.* Out-Grow was not hiring, was not offering franchising opportunities, and never authorized Miami Mushroom or McCully to use the Out-Grow brand in any way. *See* Complaint ¶¶ 23–24.

Nonetheless, Miami Mushroom—in selling its own mushroom products—copied Out-Grow's (1) trademark, (2) product images, and (3) product descriptions. *Id.* ¶¶ 25–28. Examples of each are pictured below. *First*, Miami Mushroom posted the following product on Amazon under the OUT-GROW mark:



*See* Compl. Ex. E [ECF No. 1-8].

*Second*, Miami Mushroom copied Out-Grow's product images. Here, for example, are Out-Grow's photographs of its products pictured alongside Miami Mushroom's copies of those images:



*See* Compl. Ex. D [ECF No. 1-7].

*Third*, Miami Mushroom copied some of Out-Grow's product descriptions. For example:

| Out-Grow's Original Description | Miami Mushroom's Copied Description |
| --- | --- |
| **Details for BRF JARS ™ Brown Rice Flour Based Mushroom Substrate**<br><br>Brown rice flour based mushroom substrate fully sterilized in easy to inoculate half pint jars. BRF jars are the perfect growing medium for almost any gourmet mushroom strain. The jars are filled with nutritious mushroom substrate and fully sterilized for your convenience. Simply inoculate through the flat blue self healing inoculation point. Make a circular motion with your needle as you are inoculating to evenly distribute the gourmet mushroom spore solution. BRF jars also have a gas exchange filter so no extra layer of vermiculite is needed. Once your BRF jar is fully colonized you can then birth the cake to your desired fruiting chamber. After you have birthed your cakes you can wash and reuse the jar and lid as well. | **Description**<br><br>Miami Mushroom signature BRF substrate that is fully sterilized via autoclave in easy to inoculate and ready to go half-pint jars. BRF jars are the perfect growing medium for almost any gourmet mushroom strain. The jars are filled with nutritious mushroom substrate and fully sterilized for your convenience. Simply inoculate through the flat grey self-healing inoculation point. Make a circular motion with your needle as you are inoculating to evenly distribute the gourmet mushroom spore solution. BRF jars also have a gas exchange filter so no extra layer of vermiculite is needed. Once your BRF jar is fully colonized you can then birth the cake to your desired fruiting chamber. After you have birthed your cakes you can wash and reuse the jar and lid as well. |

*See id.*

After discovering Miami Mushroom's infringing use of Out-Grow's brand name, product images, and product descriptions, Out-Grow sent Miami Mushroom a cease-and-desist letter. Compl. ¶ 29. In response to that letter, McCully confirmed that he would "comply with refraining from use" and that he had "removed the images/text." *Id.* ¶ 30. It turned out that this was false. Despite McCully's representations, Out-Grow learned that Miami Mushroom and McCully were continuing to use Out-Grow's trademark, product images, and product descriptions. *Id.* ¶ 31. As a result, Out-Grow sent them a second cease-and-desist letter. *Id.* ¶ 32. But Miami Mushroom and McCully continue to use Out-Grow's IP to sell mushroom products. *Id.* ¶ 34. This is true even though Out-Grow has reported Miami Mushroom to Amazon at least a dozen times. *Id.* ¶ 33.

Out-Grow filed this lawsuit on April 5, 2021, and timely served the Defendants through drop service. *See* Returns of Service [ECF Nos. 7, 8]. As set out in the Returns of Service, McCully

4

(unsuccessfully) attempted to evade service: When the process server approached him, McCully "advised [that] if [the process server] did not leave he was going to call the police." *Id.* McCully then "ran back inside and closed the door on the [process server]." *Id.* The process server successfully served the Defendants by dropping the documents through McCully's front door. *Id.*[1] But, like some underground Mycelium, the Defendants have disappeared. *See generally* Docket. On May 4, 2021, the Clerk entered defaults against both Defendants. *See* Clerk's Entry of Default [ECF No. 15]. Out-Grow has now filed its Motion, seeking an entry of final default judgment. *See* Motion at 1.

## THE LAW

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes courts to enter final default judgments against any party who has failed to respond to a complaint. Still, "[a] defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (cleaned up) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, the trial court must first determine whether there is a sufficient factual basis in the complaint to sustain the judgment. *See id.*; *see also Annon Consulting, Inc. v. BioNitrogen Holdings Corp.*, 650 F. App'x 729, 733 (11th Cir. 2016) ("Because the allegations in [the] complaint—admitted as true—establish Defendants' liability . . . , default judgment was appropriate."). "Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to

---

[1] Drop service is proper where, as here, the process server "drops" the papers in the immediate vicinity of a fleeing defendant. *See, e.g., SEC v. Reinhard*, 352 F. App'x 309, 313 (11th Cir. 2009) ("Where, as here, the person to be served answers the door and then retreats into his residence, only to find the service papers at his door at a later date, process is deemed sufficient under Florida law."); *Kennedy v. Grova*, 2012 WL 1368139, at *2 (S.D. Fla. Apr. 19, 2012) ("Under Florida law, service is proper if a party being served attempts to avoid service, and the process server 'leaves the papers at a place from which such person can easily retrieve them and takes reasonable steps to call such delivery to the attention of the person to be served.'" (quoting *Olin Corp. v. Haney*, 245 So.2d 669, 670–71 (Fla. 4th DCA 1971))); *Sportcrete Ltd. v. Sternberg*, 2011 WL 13298767, at *4 (M.D. Fla. Oct. 6, 2011) ("The case law, however, considers [drop] service equivalent to personal service when the individual to be served flees the process server to avoid service.").

5

state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015).

Rule 55(b)(2) also provides that a court may conduct hearings or make referrals "when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Despite the Rule's permissive language, a "judgment of default awarding cash damages [can]not properly be entered 'without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.'" *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). Damages may be awarded "only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Id.* at 1544 (internal quotation marks omitted).

## ANALYSIS

### I. Default Judgment

Out-Grow, our plaintiff, asserts two claims: one for unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); and a second for unfair competition in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*. As redress, Out-Grow seeks both damages and injunctive relief.

#### A. Lanham Act

Out-Grow has plausibly alleged that Miami Mushroom and McCully violated the Lanham Act—both by infringing on its trademark and by copying its product images and descriptions. We address each in turn.

*First*, Out-Grow has stated a claim for trademark infringement under § 1125(a).[2] To prevail

---

[2] Although trademark-infringement claims for registered marks (like Out-Grow's) are generally brought under § 1114 of the Lanham Act, courts have held that § 1125(a) *also* affords protection to registered (in addition to unregistered) marks. *See, e.g.*, *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1262 (11th Cir. 2017) (recognizing that "§ 1125 [is] a provision which can apply to a federally-registered mark"); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 608 (7th Cir. 1986) (Posner, J.) (noting that § 1125(a) "protects unregistered (common law) trademarks as well as

6

on a claim for trademark infringement, "a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion*, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001). Out-Grow has plausibly alleged both elements.

As to the first element, Out-Grow's prior rights in its OUT-GROW mark are supported by three considerations. *One*, "[a] trademark registered on the principal register is presumptively valid." *Sream, Inc. v. Cancer Smoke Shop, LLC*, 2017 WL 7798663, at *2 (S.D. Fla. Jan. 25, 2017). Here, Out-Grow has alleged that it registered its trademark on the principal register, affording it that presumption of validity. *See* Compl. ¶ 14. *Two*, that presumption of validity is supported by the distinctiveness of Out-Grow's mark. "To be valid, a trademark must be 'distinctive'—that is, it must 'serve the purpose of identifying the *source* of . . . goods or services,' not just the goods and services themselves." *Engineered Tax Servs., Inc. v. Scarpello Consulting, Inc.*, 958 F.3d 1323, 1327 (11th Cir. 2020). Out-Grow's mark is distinctive because it identifies the source of the goods (the Out-Grow company)—and not just the goods themselves (mushroom products).[3] *Three*, further bolstering our Plaintiff's rights over the

---

federally registered trademarks"); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1375 (M.D. Fla. 2008) ("Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) forbids trademark infringement . . . and protects both registered and unregistered marks."). Out-Grow can thus establish a claim under § 1125(a).

3     The Eleventh Circuit has "classified marks into four categories. . . : (1) 'fanciful' or 'arbitrary,' (2) 'suggestive,' (3) 'descriptive,' and (4) 'generic.'" *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 950 F.3d 776, 783 (11th Cir. 2020) (quoting *Coach House Rest., Inc. v. Coach & Six Restaurants, Inc.*, 934 F.2d 1551, 1559 (11th Cir. 1991)). "We consider fanciful marks (think 'Verizon' telecommunications—the name is a made-up word), arbitrary marks (think 'Apple' computers—the name is a real word that has nothing to do with the product) and suggestive marks (think 'Igloo' coolers—the name is a real word that bears only an oblique relationship to the product) to be 'inherently' distinctive." *Id.* On the other hand, the Eleventh Circuit "consider[s] descriptive marks (for example, an eyeglasses store called 'Vision Center') and generic marks (a book-selling company called 'Books') not to be inherently distinctive." *Id.* The restrictions on trademarking descriptive and generic terms are grounded in a few policy considerations—including, for instance, that a company should not be permitted to trademark, and thus prohibit competitors from using, terms that are necessary to identify or describe a product. *See, e.g.*, 2 MCCARTHY ON TRADEMARKS AND UNFAIR

7

OUT-GROW mark is the principle that "[t]he party who first uses a mark in commerce is said to have priority over other users." *Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015). Out-Grow has used its mark since 2011 (and registered its mark in 2018)—all before Miami Mushroom first used it in 2020. *See* Compl. ¶¶ 11, 15–17. Out-Grow thus has valid, prior rights in its mark.

As to the second element, Out-Grow has plausibly alleged that Miami Mushroom and McCully's use of the Out-Grow mark is likely to cause confusion among consumers. *See id.* ¶¶ 42, 44, 50 (alleging that the Defendants' use of the mark is "likely to cause confusion"). In assessing the likelihood of confusion, courts consider seven factors:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1264 (11th Cir. 2017) (quoting *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016)).

These factors weigh heavily in favor of Out-Grow here. *One*, Out-Grow's mark has moderate

---

COMPETITION § 11:18 (5th ed.) ("No one seller should be granted the exclusive right to describe a product and thus preempt or limit competitors' use of the term to describe their own products.").

To determine whether a mark is "suggestive," the Eleventh Circuit relies on two tests. In our case, both tests indicate that the OUT-GROW mark is (plausibly) suggestive—and therefore distinctive. *First*, "[a] mark is merely descriptive, rather than suggestive—and thus *not* inherently distinctive—if 'the customer who observes the term can readily perceive the nature of plaintiff's services, without having to exercise his imagination.'" *Engineered Tax Servs.*, 958 F.3d at 1329 (quoting *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1524 (11th Cir. 1991)). Applied here, we think it plausible to infer that a customer observing the Out-Grow's mark would have to take an imaginative leap to get from OUT-GROW to mushrooms. In this way, Out-Grow's use of the mark is similar to another company's use of the name "Igloo" for coolers. *Second*, "courts considering whether a mark is truly suggestive—or instead, merely descriptive—ask 'whether competitors would be likely to need the terms used in the trademark in describing their products.'" *Id.* at 1331 (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 116 (5th Cir. 1979)). Applied here, we (again) think it plausible that other mushroom businesses do not need to use the term "out-grow" to identify or describe their products or services. Under either test, then, Out-Grow has stated a plausible claim to distinctiveness.

strength, since—as we explained in note 3, *supra*—the Out-Grow mark is suggestive.[4] *Two*, the infringed mark (Out-Grow) and the infringing mark (Out Grow) are nearly identical. Consumers are thus (very) likely to confuse them. *Three*, Out-Grow and the Defendants were using the mark to sell the same mushroom products. *Four*, the parties' trade channels and customers align almost perfectly: They both sell mushroom products on Amazon, Etsy, and eBay. *Five*, because Out-Grow doesn't describe the kinds of advertising media the various parties use, the Court will weigh this factor in the Defendants' favor. *Six*, Out-Grow has plausibly alleged that Miami Mushroom and McCully intentionally used Out-Grow's mark to capitalize on its goodwill. Indeed, Miami Mushroom and McCully sent a letter to Out-Grow saying "I love [your] website" and "request[ing] permission for rights to use your brand." *See* Letter [ECF No. 1-6]. Despite never receiving permission, Miami Mushroom and McCully nevertheless copied the Out-Grow brand name. *Seven*, while Out-Grow has not offered evidence of actual consumer confusion, it was also deprived of its right to discovery because of the Defendants' failure to appear in this case. Even if we assume that this this factor militates *slightly* in favor of the Defendants, five of the seven factors weigh unmistakably in Out-Grow's favor. Out-Grow has thus plausibly alleged that the Defendants' infringing use is likely to cause confusion among consumers.

In short, Out-Grow has stated a claim for trademark infringement—both because it has prior rights in the OUT-GROW mark and because the Defendants' use of "Out Grow" is likely to cause consumer confusion. Indeed, courts routinely enter default final judgments on trademark-infringement claims in similar circumstances. *See, e.g.*, *Ghost Controls LLC v. Gate1Access LLC*, 2020 WL 8309717, at *3 (M.D. Fla. Oct. 16, 2020), *report and recommendation adopted*, *Ghost Controls, LLC v. Gate1access LLC*, 2021 WL 50334 (M.D. Fla. Jan. 6, 2021) (entering default final judgment where the

---

4 *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1540 (11th Cir. 1986) (indicating that suggestive marks have "moderate" strength).

defendant copied the plaintiff's GHOST CONTROLS mark); *CBRE, Inc. v. Cap. Com. Real Est. Grp., Inc.*, 2019 WL 7708529, at *4 (S.D. Fla. July 31, 2019) (entering default final judgment where the defendant's green CCREG logo resembled the plaintiff's green CBRE logo); *Sream, Inc. v. Barakat Food, Inc.*, 2017 WL 7792613, at *2 (S.D. Fla. Oct. 4, 2017), *report and recommendation adopted*, 2017 WL 7796163 (S.D. Fla. Oct. 31, 2017) (entering default final judgment where the defendant copied the plaintiff's ROOR mark).

*Second*, Out-Grow has sufficiently stated a claim for false designation of origin under § 1125(a) based on the Defendants' use of Out-Grow's product images and product descriptions. Starting with the text of the statute, *cf.* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."), the Lanham Act provides a civil cause of action against:

> Any person who, on or in connection with any goods or services, . . . uses . . . any false designation of origin, . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a). This "language—which prohibits a 'false designation of origin'—has been construed by the courts as creating a federal action for 'passing off,' which occurs 'when a producer misrepresents his own goods or services as someone else's.'" *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1248 (11th Cir. 2007) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003)). Passing off can be "achieved by using the original product as the demonstrator for selling the accused infringer's cheaper imitation." *Turner Greenberg Assocs., Inc. v. C & C Imports, Inc.*, 320 F. Supp. 2d 1317, 1334 (S.D. Fla. 2004), *aff'd*, 128 F. App'x 755 (11th Cir. 2005).

According to Out-Grow's averments, that is exactly what happened here. Out-Grow says that, by using—not just its mark—but also its product pictures and product descriptions, Miami Mushroom and McCully passed their "counterfeit products" off as Out-Grow originals. *See* Compl. ¶¶ 33, 42.

10

As set out in the Complaint, "consumers viewing Miami Mushroom's online product listings will likely be misled into assuming the products Miami Mushroom sells are associated with or manufactured by Out-Grow." *Id.* ¶ 42. In other words, by copying Out-Grow's images and descriptions, Miami Mushroom and McCully misled consumers as to the "origin, sponsorship, or approval" of their products. 15 U.S.C. § 1125(a). This is sufficient, at least on these facts and at this stage, to set out a plausible claim for relief.

Courts have reached similar conclusions on similar sets of facts. For example, in *Aesthetic Assocs., Inc., PS v. Key W. Inst. for Plastic Surgery, Inc.*, 2019 WL 1922854 (S.D. Fla. Feb. 5, 2019), the plaintiff-surgeon alleged that the defendant-surgeon misappropriated "before-and-after patient images and false advertising in passing off [the plaintiff's] surgical results as their own." *Id.* at *1. The court found that this was sufficient to state a claim for passing off. *Id.* at *3. And a similar thing happened in our case: Miami Mushroom and McCully took Out-Grow's pictures of Out-Grow's own products and attempted to pass Out-Grow's products off as their own.

Similarly, in *ShadeFX Canopies, Inc. v. Country Lane Gazebos, LLC*, 2013 WL 9827411 (S.D. Fla. June 14, 2013), the defendant, selling canopies, used pictures of the plaintiff's canopies in its brochures. *Id.* at *8. The court found that the defendant was liable for passing off because the defendant "promoted and sold knock off retractable canopies through the use of the [plaintiff's] trademark and logo as well as through the use of photographs of [the plaintiff's] product." *Id.* at *11. Likewise, in our case, Miami Mushroom and McCully sold knock-off Out-Grow products by copying Out-Grow's trademark, photographs, and product descriptions.[5]

---

5 *See also, e.g.*, *Quick Time Performance.com, Inc. v. Granatelli Motor Sports, Inc.*, 2019 WL 4745279, at *3 (D.N.J. Sept. 30, 2019) (finding a plausible claim for passing off where the defendant "display[ed] a photo of [the plaintiff's] cutouts to sell its products" and thus "passe[d] off its goods as [the plaintiff's] and so misrepresents its own goods as someone else's"); *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2018 WL 11220835, at *5 (S.D.N.Y. Apr. 18, 2018) (finding a plausible claim for passing off where the defendants "copied photographs and descriptions of [the plaintiff's] products

11

There are, in fairness to the Defendants, some courts who have rejected similar claims, reasoning that "claims involving the unaccredited use of another's photographs in the connection with the sale of goods or services must be pursued as copyright claims." *Barn Light Elec. Co., LLC v. Barnlight Originals, Inc.*, 2016 WL 7135076, at *9 (M.D. Fla. Sept. 28, 2016) (collecting cases). These courts have held, in short, that photograph-infringement is a violation of the Copyright Act, not the Lanham Act. For this proposition, they rely on the Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).

The facts of that case germinated with General Dwight D. Eisenhower's written account of World War II. *Id.* at 25. A bookmaker published Eisenhower's book, copyrighted it, and granted exclusive television rights to Fox. *Id.* Fox, in turn, created and copyrighted a television series based on the book. *Id.* at 26. The copyright on the television series eventually expired. *Id.* Nearing the fiftieth anniversary of the War, Dastar used the original television series, now in the public domain, to put together a shorter, revised series. *Id.* Fox sued Dastar, alleging "reverse passing off" under the Lanham Act—*i.e.*, that Dastar had taken *Fox's* idea and sold it as Dastar's own. *Id.* at 27. The Court held that Fox had not stated a claim because the Lanham Act's prohibition against falsely designating the "origin" of "goods" prohibits falsely designating "the producer of the tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." *Id.* at 37. To hold otherwise, according to the Court, would be to afford those whose copyrights have already expired a "perpetual" copyright under the Lanham Act. *Id.* And, as applied to that case, there was no false designation of origin because Dastar *had* produced the tangible product (the videos) it sold on the market—even though it had not authored the ideas depicted in those videos.

---

on the [defendants'] Websites to advertise their own lighting fixtures"); *Williams v. Cavalli*, 2015 WL 1247065, at *5 (C.D. Cal. Feb. 12, 2015) (finding a plausible claim for passing off where the defendants "sold their own products using [the plaintiff's] source-identifying imagery").

*Dastar* does not bar Out-Grow's claim for a few reasons. As an initial matter, our case involves totally different facts: *Dastar* was a case about *reverse* passing off (where the defendant pretends the plaintiff's product is *its* product), whereas our case is about passing off (where the defendant pretends *its* product is the plaintiff's product). While *Dastar* was a case about expired copyrights, our case doesn't involve any copyrights. *Dastar* was a case about a video depicting the plaintiff's videos, but our case is about a picture depicting the plaintiff's physical product. Most importantly, though, *Dastar* specifically provides that a false-designation-of-origin claim may be based on a party's misrepresenting the source—or producer—of the good that's being sold. And that's exactly what happened in this case: Miami Mushroom and McCully misrepresented the producer of the good being sold by passing off their products as Out-Grow products, knowing (of course) that those products were, in fact, *not* produced by Out-Grow. *Dastar*, then, far from mandating a different result, appears to support Out-Grow's claim.

### B.     FDUTPA

For many of the same reasons, Out-Grow has stated a viable claim under FDUTPA. "The legal standards we apply to the FDUTPA claim are the same as those we have applied under [§ 1125(a)] of the Lanham Act." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (quoting *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011)); *see also CBRE, Inc.*, 2019 WL 7708529, at *8 (same); *Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC*, 312 F. Supp. 3d 1325, 1341 n.9 (S.D. Fla. 2018) (same). Because Out-Grow has stated a claim under the Lanham Act—and since both provisions are governed by the same standard—it has also stated a claim under FDUTPA.

### II.     Damages and Injunctive Relief

We turn, then, to redress. Having established liability, Out-Grow asks for (1) $40,000 in damages under FDUTPA, (2) $15,369.40 in attorneys' fees (under FDUTPA), and (3) an injunction

permanently enjoining the Defendants from their infringing activities. *See* Motion at 2–3. We take each in turn.

*First*, Out-Grow hasn't supplied enough information for this Court to award damages at this stage of the case. Even in the context of a default judgment, "[a] court has an obligation to assure [itself] that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co.*, 777 F.2d at 1544 (explaining that damages may be awarded on a default judgment only if the record adequately reflects the basis for the award). Rule 55 thus gives courts "broad discretion to determine what additional evidence, if any, is required to enter default judgment." *C & M Inv. Grp., Ltd. v. Campbell*, 448 F. App'x 902, 906 (11th Cir. 2011).

Our record, however, provides little basis for Out-Grow's request for $40,000 in damages. While Out-Grow has alleged, for instance, that it has suffered *some* amount of damages, *see* Compl. ¶ 52, it has yet to proffer factual support establishing *what* those damages actually are. *Cf. PODS Enterprises, LLC v. U-Haul Int'l, Inc.*, 126 F. Supp. 3d 1263, 1286 (M.D. Fla. 2015) (awarding damages, under FDUTPA, based on "the corrective advertising expenses [the plaintiff] will have to incur to recover the diminished value of its brand"). We'll, therefore, **DENY without prejudice** Out-Grow's request for damages.

*Second*—and similarly—we cannot determine, on the record before us, what a reasonable fee would look like. "Under [FDUTPA], courts have discretion to grant attorneys' fees and costs to a prevailing party." *Victory Int'l (USA), LLC v. Perry Ellis Int'l, Inc.*, 2009 WL 1956236, at *1 (S.D. Fla. July 7, 2009); *see* Fla. Stat. § 501.2105(1) (providing for the award of attorneys' fees to the prevailing party in FDUTPA cases). Counsel, however, is entitled only to "receive his or her *reasonable* attorney's fees and costs." *Id.* (emphasis added); *see also N Cherry Elec. (PTY) LTD v. Ferreira*, 2020 WL 2526516, at *2 (S.D. Fla. May 18, 2020) (calculating fees under FDUTPA by "multiplying the number of hours reasonably expended by a reasonable hourly rate").

While Out-Grow, as the prevailing party, has established its entitlement to attorneys' fees and costs, it has not provided sufficient evidence to justify the *amount* of fees and costs it has requested. So, for instance, Out-Grow's attorneys attest to a total number of hours worked and a total dollar amount owed, but they do not set out the specific hours each lawyer and paralegal worked on the case, the rates for the work they did, or a description of the work they completed. Nor do they explain the basis for any of the "costs" they have requested. Without this information, we cannot say whether the fees and costs they've requested *are* reasonable. *See, e.g., G. Robert Toney & Assocs., Inc. v. M/V "Surging"*, 2013 WL 12383455, at *1 (S.D. Fla. Nov. 25, 2013) (Rosenbaum, J.) ("Plaintiff provides no time sheets or other documentation that would explain how the requested total fees and costs award was calculated. Accordingly, the Court cannot evaluate the reasonableness of the requested fees and costs award at this time."). We'll thus **DENY without prejudice** the request for fees and costs.

*Third*, and in the way of contrast, Out-Grow *has* established that it's entitled to a permanent injunction. A plaintiff seeking a permanent injunction must prove:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Out-Grow has satisfied each of those requirements here.

As to the first, "a sufficiently strong showing of likelihood of confusion caused by trademark infringement may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (cleaned up) (quoting *E. Remy Martin & Co. v. Shaw–Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985)). Out-Grow has established a strong likelihood of confusion: The Defendants are using Out-Grow's marks, pictures, and descriptions; they're doing it in the very same stores Out-Grow uses; and they're selling the very same products.

15

It's a bit hard to think of a business practice that would confuse consumers more. This is sufficient to show irreparable harm.

As to the second, damages would not adequately compensate Out-Grow for its injury. According to the Complaint, Miami Mushroom and McCully have continued to infringe on Out-Grow's IP, despite numerous complaints and demands. As this Court put it in a similar context, "[a]n award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue." *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1262 (S.D. Fla. 2016).

As to the third, the balance of hardships also supports a permanent injunction. So long as Miami Mushroom and McCully continue their infringement, Out-Grow faces a significant risk of stolen sales, lost customers, and diminished reputation. By contrast, Miami Mushroom and McCully face no hardship from an injunction prohibiting their unlawful activities. *Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290–91 (S.D. Fla. 2016) ("Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks, which is an illegal act.").

As to the fourth, the public interest supports an injunction to prevent consumers from being misled by Miami Mushroom and McCully's products. *See Nike, Inc. v. Leslie*, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). Given these four factors, we'll **GRANT** Out-Grow's request for a permanent injunction prohibiting future infringement.[6]

---

6 Out-Grow has also requested a "permanent injunction restraining Defendant Ryan McCully from harassing or threatening Out-Grow or its owner, Mike Wiberg." Motion at 3. In support of this request, Out-Grow has attached a series of emails McCully sent to Wiberg. *See* Emails [ECF No. 1-9]. But Out-Grow has not cited any authority supporting such an injunction, nor is the Court convinced that such an injunction is appropriate here.

* * *

Accordingly, the Court hereby **ORDERS and ADJUDGES** that the Plaintiff's Motion for Default Final Judgment [ECF No. 18] is **GRANTED in part and DENIED in part**. Out-Grow may file a supplemental motion for damages *or* attorneys' fees and costs *or* both by **July 20, 2021**. If Out-Grow does not file a supplemental motion by that date, the Court will enter final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure. This case shall remain **CLOSED**. All other deadlines are **TERMINATED**, and all other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of July 2021.

                                           **ROY K. ALTMAN**
                                           **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record